DREW, J.
[ iJimmy Joseph Yates was charged by bill of information and convicted at jury trial for the crime of indecent behavior with juveniles, a violation of La. R.S. 14:81(A)(2). He was fined $1,000 and sentenced to five years at hard labor, all but three years suspended, with three years of probation. Motions for post-verdict judgment of acquittal and to reconsider sentence were filed and denied. We affirm.
*1264 FACTS
This case arises from a sting operation by the Northwest Louisiana Internet Crimes Against Children Task Force. In February 2007, Task Force Detective Robert Greer logged onto an internet “romance” chat room, pretending to be a 15-year-old girl named “Lori Poff.” Yates soon indicated he wanted to talk to Lori.
The conversation turned sexual, and clearly was conducted in violation of the statute.
The state’s first witness at trial was Caddo Parish Sheriffs Office Det. Greer, who testified about how the operation was set up and about his conversation with Yates. Based on the conversation and other information obtained through the operation, a search warrant was obtained for Yates’ house on Marquette Street in Shreveport. The search yielded computer equipment, CDs, diskettes, and some pornographic magazines. Photographs were taken during the search and were introduced into evidence.
Greer explained that he became alarmed when Yates indicated he worked at Rutherford House (a halfway house program for troubled teens). Once Yates had indicated that he would like to meet, Greer tried to set up a |2meeting location. Yates tided to place a voice call to Greer over the computer, but Greer indicated there was no microphone on his computer and asked if Yates wanted him to call him. When Yates responded affirmatively, Greer requested that Officer Nicole Mitts, a female, call the defendant. Deputy Mitts testified that:
• in the phone conversation[1] with Yates they were “trying to figure out if we were going to meet” and that Yates “got a little hesitant about it”;
• she (Mitts) was present when Yates was arrested and she recognized Yates’ voice when he was arrested as the same man she spoke to on the phone when she was playing the role of a 15-year-old girl;
• she identified the defendant in the courtroom;
• after Yates was Mirandized, he said he did not remember Mitts’ voice and asked her if he had said anything inappropriate to her while on the phone.
Immediately after Mitts’ testimony, and outside the presence of the jury, Yates indicated that he did not approve of the way his counsel, Sarah Giddens, was representing him and wanted to represent himself. Judge Garrett had Yates sworn in and asked him his age and his education. She then asked him to explain why he thought he wanted to waive his constitutional right to counsel. Defendant responded that there had been “a considerable difference of opinion” between him and Giddens and that, “It all boils down to Mr. Greer.... I mean, I’m sure she did her job sufficiently, but she didn’t do it in a way I would have done it or liked to have it done.” Judge Garrett asked him what he thought he wanted to do about it, and he responded by asking if he could cross-examine Greer. | Judge Garrett asked if he had any legal training and if he understood anything about evidentiary rules or procedure. He answered in the negative. Judge Gari'ett then noted that the law required her to explain the disadvantages of self-representation, and indicated she was not going to stop the trial and start over as it would be disruptive in the eyes of the jury. She noted that if Yates decided to represent himself, he would have to comply with the rules of evidence and procedure.
She also asked Yates if it would be helpful to take a break so that he could *1265 consult with his attorney on the matters he would like addressed with Greer. He responded that Giddens had not spoken to him since the first break and that the court might ask her if she was willing to talk anymore. Judge Garrett again asked if Yates wanted to take a break to consult with counsel, and then asked Giddens if she thought that would be beneficial. Gid-dens responded that she was fine with having another conversation with Yates, but, without getting into it, based on what she believed Yates wanted her to do, she would not do it. She stated that Yates did not find that what she did was cross-examining Greer, but coddling him. Judge Garrett then again asked Yates if he wanted to represent himself, and indicated that if he wanted to she was going to allow it and would appoint Giddens as standby counsel. Yates eventually decided that he did not want to represent himself. He agreed to be represented by counsel.
District Attorney’s Investigator Mark Fargerson was then qualified as an expert in forensic computer analysis. He testified about the analysis he performed on Yates’ computer hard drive, which revealed that:
1his analysis corroborated that the particular internet chat room involved had been accessed from Yates’ computer;
• there were at least 39 entries related to the name “Lori Poff;” and
• pornographic pictures were reposited on the computer, as well as pictures of young girls.
The state then called Detective Paula Moreno, a sex crimes investigator for the Shreveport Police Department, who testified that she had been involved in a previous investigation of Yates for possession of child pornography, but that case was dismissed because a witness had moved out of state.
The only witness for the defense was Yates, who testified that:
• he had been employed at Rutherford House for about two years, maintaining a fleet of vans and teaching a vocational class;
• he chatted on the internet and considered the chat rooms as “an alternate life or a fantasy life, or whatever”;
• to visit a Yahoo! chat room (like the one in this case), visitors have to say that they are 18 years old;
• he occasionally met people in person that he had chatted with online after long conversations and usually a phone call;
• he admitted his conversation online with “Lori,” but stated he decided not to go through with a meeting;
• he denied that he believed that “Lori” was a real 15-year-old girl;
• the most common lies in chat rooms were about age and weight;
• he asked during the conversation if Lori was a cop; and
• he thought the communication was a “cop joke” and a setup.
The jury unanimously found Yates guilty of indecent behavior with juveniles. A motion for post-verdict judgment of acquittal was denied. A PSI was ordered. At Yates’ sentencing hearing, the court indicated that:
15* it had reviewed the PSI report;
• this was Yates’ first felony conviction;
• he had a prior arrest for allegedly having child pornography on his computer, which was dismissed after a motion to suppress was granted;
• the jury obviously did not believe defendant’s testimony about believing that his conversation was a fantasy, and all participants had to be 18;
• Yates’ employment at Rutherford House was a troubling factor; and
• pornographic pictures were seized from Yates’ computer which the court thought in some instances bordered on child pornography.
*1266 The court sentenced Yates to five years at hard labor, with all but three years suspended, with credit for time served. The court stated that when Yates was released from incarceration he would go on probation, that he had to register as a sex offender, and that he could not work around minors. The court stated that as special conditions of probation Yates could no longer own and use a computer.
The court also stated, later in the hearing, that, “The period of his probation would be — it is my intent that he serve three years on probation when he is eventually released from incarceration. Does that clarify it for the minutes?”
DISCUSSION

Sufficiency

In this assignment, Yates argues that he relied on the limitation that persons in the chat room were 18 years of age, that he considered the chat room to be for fantasy role-playing, and that he assumed “Lori Poff” was actually an adult playing a role. He argues that given the age limitation on |fithe chat room, it was net reasonable for him to believe he was chatting with a minor. He does not argue about sufficiency with respect to any of the other elements of the crime.
The state asserts that the jury was neither naive nor ignorant, and that the evidence was more than sufficient to support the jury’s verdict.
Our law on sufficiency is well settled.[2]
The provisions of La. R.S. 14:81(A) state, in pertinent part:
Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
*1267 In the instant case, the jury rejected Yates’ self-serving testimony |7about his belief as to the age of the person with whom he was communicating. While persons using the chat room were supposed to be 18 years old or over, anyone could log on, and Yates made statements in his conversation with “Lori” that indicated he believed the person with whom he was communicating was 15 years old. The jury made a credibility determination and weighed the evidence as to whether Yates reasonably believed he was communicating with a 15-year-old. The jury’s decision was within the bounds of rationality and should not be disturbed.

Excessiveness

Yates asserts that the trial court failed to adequately consider the factors of La. C. Cr. P. art. 894.1. He argues that the lack of prior convictions indicates the potential for rehabilitation. He points out that there was no physical injury to any person and that there was no physical contact that could have led to injury. He asserts that the cost of incarcerating him far outweighs any positive effects of incarceration and that the sentence imposed is nothing more than the needless imposition of pain and suffering, serving no rehabilitative purpose.
The state points to the trial court’s wide discretion in sentencing, notes the prior incident involving child pornography, and argues that the sentence does not shock the sense of justice and was not an abuse of discretion.
Our law on excessiveness is well settled.[3]
|,sYates could have received up to seven years at hard labor and a $5,000 *1268 fine; he effectively received three years’ imprisonment and a $1,000 fine. The trial court thoroughly reviewed a PSI before imposing sentence. It was aware of his prior arrest involving child pornography and noted that some of the pictures retrieved from Yates’ computer bordered on child pornography. Yates’ argument that there was no physical injury to any person is immaterial.
In this matter, where the defendant received a midrange sentence and |9had a record that involved an arrest for child pornography, the record shows that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. This record clearly shows a sound factual basis for the sentence imposed, and the sentence does not shock the sense of justice.

Ineffectiveness and Self-Representation

Yates asserts that his trial counsel’s representation was so deficient that at one point in the proceedings he sought to represent himself, that counsel refused to vigorously cross-examine Detective Greer, and that it is reasonable to believe he should have been allowed to either represent himself or seek other counsel. He also asserts that the court “denied time for any reasonable conclusions to be reached between him and counsel.”
Our law on ineffectiveness and self-representation is well settled.[4]
*1269 |10In arguing ineffective assistance, the defendant does not specifically point out anything other than counsel’s alleged refusal to vigorously cross-examine, and he does not indicate the matters on which counsel should have pressed Det. Greer.
The trial court followed the law in warning Yates about the dangers of self-representation. The court gave him a choice as to whether to represent himself, and provided him every opportunity to confer with his lawyer. The court advised him that she would allow self-representation with Giddens as standby counsel. The defendant declined the offer and Involuntarily continued with representation. We perceive no error.

Speedy Trial

Yates begins this assignment of error by citing the United States and Louisiana Constitutions for the right to speedy trial. He then asserts that he filed a -pro se motion for speedy trial on October 10, 2007. He cites La. C. Cr. P. art. 701(F) for the proposition that a motion for a speedy trial not verified by the affidavit of counsel shall be set for contradictory hearing within 30 days. He asserts that no contradictory hearing was held within 30 days, and that on November 9, 2007, he filed another motion for speedy trial that was ignored by the court. He concludes by citing the familiar test in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), but then says no more. Thus, it would appear that this assignment *1270 of error basically asserts the statutory speedy trial right because the only facts argued concern Article 701.
The minutes of court indicate that Yates came before the court for preliminary examination on May 8, 2007, and the court ruled the state had shown probable cause; the bill of information was filed, and Yates waived arraignment and pled not guilty. The trial later was set for September 24, 2007. On that date the trial was reset for October 22, 2007. On October 10, 2007, Yates filed a motion for speedy trial in proper person. On October 22, 2007, he appeared in court with his attorney and the trial was reset for December 3, 2007. On November 9, 2007, Yates filed another motion for speedy trial in proper person. The trial date was continued two more times before Yates, through his attorney, filed a motion for speedy trial on 112Pecember 7, 2007. That motion stated that the defendant gave notice that he wished to proceed to trial at the earliest possible date, thus availing defendant of his right to speedy trial under La. C. Cr. P. art. 701. On February 13, 2008, the matter was reset for trial on March 31, 2008, and the case was taken up on that date.
Our law on speedy trials is well settled.[5]
*1271 |13There is no constitutional violation here. The trial commenced well within the two-year limitation; Yates was arrested on March 19, 2007, and | uthe case was taken up for trial on March 31, 2008. Furthermore, he has alleged no prejudice.
As for the alleged statutory violation, now that Yates has been tried and convicted, his allegation that Article 701 has been violated is moot.

Clarification of Sentence

Yates points out that he was sentenced to five years at hard labor, all but three suspended, with credit for time served, and also was sentenced to serve three years on probation. He argues that when “totalized,” the sentence is a six-year sentence instead of the five-year sentence imposed by the court. He then states, “As it is omitted from the record, the sentence imposed by the Court was two (2) years at hard labor and three (3) years probation, therefore the total is a five (5) year sentence.”
La. C. Cr. P. art. 893 allows the court, after a first or second conviction of a non-capital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation and parole. The probationary period shall be specified and not be less than one year nor more than five years. In State v. Diaz, 615 So.2d 1336 (La.1993), after conviction of second degree battery, the defendant was sentenced to serve five years at hard labor (the maximum sentence). *1272 The sentence was suspended, and defendant was placed on probation with several conditions, including a term of one year in the parish jail and payment of “full and complete restitution” to the victim. The supreme court held that a district court may not impose a suspended sentence and require 115the defendant to spend additional time in jail as a condition of probation if the overall effect of the sentence is to expose the defendant to a greater term of imprisonment than provided by the statute he violated.
In State v. Payne, 633 So.2d 701 (La.App. 1st Cir.1993), the defendant was convicted of five counts of indecent behavior with a juvenile and received five concurrent sentences of seven years at hard labor. The trial court suspended five years of each sentence and placed the defendant on probation for four years. The defendant argued that when a sentence includes a combination of jail time and probation, the two periods must be added together for the total amount of probation time; thus, defendant argued that the sentence illegally put him on probation for six years. However, the court found that the trial court did not impose the two years of imprisonment as a condition of probation, and the imprisonment therefore was not added to the four-year term of probation; thus, the sentence was not illegal.
In this case, Yates’ serving of three years’ imprisonment was not a condition of probation. Thus, as in Payne, supra, the two terms are not added together, and even if they were, the total of five years would not exceed the maximum of five years of probation set by Article 893. Nor is this a case like Diaz because even if the jail time were a condition of probation, the total of five years would not exceed the seven-year maximum penalty for the crime. Furthermore, there is nothing in the law that requires the combination of unsuspended imprisonment plus probation to equal the total number of years of imprisonment given. í
| |6Further, when Yates filed a motion to reconsider sentence in June 2008, it stated in part that he was sentenced “to five (5) years at hard labor, all but three suspended and placed on three years active supervised probation.” This motion was filed by Yates’ counsel — thus showing counsel understood the term of probation in the sentence — and Judge Garrett denied the motion without disagreeing in any way with the motion’s statement as to the term of probation in the sentence. Thus, it would not appear that there was any misunderstanding about the sentence that would require any clarification.
DECREE
For the reasons set forth above, the defendant’s conviction and sentence should be AFFIRMED.

. The call was recorded and was played for the jury at trial.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessaiy to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57, and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747, writ denied, 04-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bon anno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. *1268 Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 08-0175 (La.6/20/08), 983 So.2d 1272; State v. Russell, 40,526 (La.App.2d Cir.1/27/05), 920 So.2d 866, writ denied, 06-0478 (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App.2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App.2d Cir.5/9/07), 956 So.2d 779.

. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). See also State v. Tilmon, 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607, writ denied, 04-2011 (La.12/17/04), 888 So.2d 866.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before *1269 relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 02-1570 (La.5/30/03), 845 So.2d 1067.
The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La.1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that “he knows what he is doing and his choice is made with eyes open.'' Faretta, supra, citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04) 871 So.2d 347; State v. Flanagan, 32,535 (La.App.2d Cir. 10/29/99), 744 So.2d 718. The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Harper, 381 So.2d 468 (La.1980).
A defendant who waits until after the commencement of trial to assert for the first time his right to represent himself, after having acquiesced in representation by an attorney throughout pretrial procedures and the institution of trial, cannot thereafter successfully assert that right unless he makes a showing that the prejudice to his legitimate interests overbalances the potential disruption of the proceeding already in progress. State v. Heg *1270 wood, supra; State v. Lee, 39,969 (La.App.2d Cir.8/17/05), 909 So.2d 672.

. There are two separate and distinct bases for a defendant's right to a speedy trial: a statutory right granted by La. C. Cr. P. art. 701 and a constitutional right embodied in the Sixth Amendment to the United States Constitution and Article I, Section 16 of the Louisiana Constitution of 1974. The two are not equivalent. State v. Leonard, 499 So.2d 585 (La.App. 2d Cir.1986); State v. Price, 96-680 (La.App. 5th Cir.02/25/97), 690 So.2d 191.
La. C. Cr. P. art. 701 provides:
A. The state and the defendant have the right to a speedy trial.
B. The time period for filing a bill of information or indictment after arrest shall be as follows:
(1)(a) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within forty-five days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.
(b) When the defendant is continued in custody subsequent to an arrest, an indictment shall be filed within one hundred twenty days of the arrest if the defendant is being held for a felony for which the punishment may be death or life imprisonment.
(2) When the defendant is not continued in custody subsequent to arrest, an indictment or information shall be filed within ninety days of the arrest if the defendant is booked with a misdemeanor and one hundred fifty days of the arrest if the defendant is booked with a felony.
Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in Subparagraph (2) shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown.
C. Upon filing of a bill of information or indictment, the district attorney shall set the matter for arraignment within thirty days unless just cause for a longer delay is shown.
D. (1) A motion by the defendant for a speedy trial, in order to be valid, must be accompanied by an affidavit by defendant's counsel certifying that the defendant and his counsel are prepared to proceed to trial within the delays set forth in this Article. After the filing of a motion for a speedy trial by the defendant and his counsel the time period for commencement of trial shall be as follows:
(a) The trial of a defendant charged with a felony shall commence within one hundred twenty days if he is continued in custody and within one hundred eighty days if he is not continued in custody.
(b) The trial of a defendant charged with a misdemeanor shall commence within thirty days if he is continued in custody and with *1271 in sixty days if he is not continued in custody.
(2) Failure to commence trial within the time periods provided above shall result in the release of the defendant without bail or in the discharge of the bail obligation, if after contradictory hearing with the district attorney, just cause for the delay is not shown.
E. “Just cause” as used in this Article shall include any grounds beyond the control of the State or the Court.
F. A motion for a speedy trial filed by the defendant, but not verified by the affidavit of his counsel, shall be set for contradictory hearing within thirty days.
Article 701 provides that the sole remedy for failure to commence trial within the mandated time period is pretrial release without bail; once a defendant has been tried and convicted, his allegation that article 701 has been violated becomes moot. State v. Mack, 37,174 (La.App.2d Cir.6/27/03), 850 So.2d 1035; State v. Hebert, 29,062 (La.App.2d Cir.01/22/97), 688 So.2d 612; State v. Outley, 629 So.2d 1243 (La.App. 2d Cir.1993), writ denied, 94-0410 (La.05/20/94), 637 So.2d 476; State v. Johnston, 480 So.2d 823 (La.App. 2d Cir.1985).
Turning to the constitutional right to speedy trial, the right is fundamental and is guaranteed to the accused. La. Const, art. I, § 16; U.S. Const. Sixth and Fourteenth Amendments; Barker v. Wingo, supra. The right attaches when an individual becomes an accused, either by formal indictment or bill of information or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La.1981). Louisiana has adopted the balancing test of Barker v. Wingo, supra, in which the conduct of both the prosecution and the defendant are weighed. The four factors to be considered are: 1) length of delay; 2) reason for the delay; 3) the defendant's assertion of his right, and 4) prejudice to the defendant, such as the possible impairment of the presentation of the accused’s defense. Barker v. Wingo, supra; State v. James, 394 So.2d 1197 (La.1981); State v. Johnston, supra.
For noncapital felony cases, the state must commence trial within two years from the date of institution of prosecution. La. C. Cr. P. art. 578(2); State v. McDonald, 30,854 (La.App.2d Cir.8/19/98), 718 So.2d 542; State v. Harris, 29,574 (La.App.2d Cir.5/7/97), 694 So.2d 626. A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. When the defendant has brought an apparently meritorious motion to quash based on prescription, the state bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled. State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284; State v. Caston, 26,415 (La.App.2d Cir. 10/26/94), 645 So.2d 1202, writ denied, 94-3137 (La.5/5/95), 654 So.2d 337.