Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,792-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

ROBERT J. DAVIS                             Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 22-CR-32998

Honorable Amy Burford McCartney, Judge

* * * * *

THE HARVILLE LAW FIRM, LLC          Counsel for Appellant
By: Douglas Lee Harville

ROBERT J. DAVIS                             Pro Se

CHARLES B. ADAMS                     Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
ETHAN P. ARBUCKLE
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and HUNTER, JJ.

**STEPHENS, J.**

This criminal appeal arises out of the Forty-Second Judicial District Court, Parish of DeSoto, State of Louisiana, the Honorable Amy Burford McCartney, Judge, presiding. Defendant, Robert J. Davis, pled guilty to one count of indecent behavior with juveniles by improper communications, a violation of La. R.S. 14:81(A)(2). Thereafter, Davis was sentenced to seven years' imprisonment at hard labor, the maximum sentence allowed under La. R.S. 14:81(A)(2). This appeal was filed by Davis; the only issue is whether the sentence imposed is excessive by constitutional standards.

## FACTS/PROCEDURAL BACKGROUND

On October 24, 2022, Davis was charged with one count of indecent behavior with juveniles by improper communication, a violation of La. R.S. 14:81(A)(2). Specifically, the State alleged by bill of information that, on or about July 11, 2022, Davis transmitted, delivered, or uttered any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to a person reasonably believed to be under the age of seventeen (K.G., d/o/b 3/13/2007) and at least two years younger than the offender, with the intention of arousing or gratifying the sexual desires of either person.[1] On November 9, 2022, Davis entered a plea of not guilty after waiving formal arraignment.

On April 18, 2023, Davis entered a guilty plea after he was advised of his right to a jury trial, his right to confront the witnesses against him, and

---

[1] Davis admitted to sending one picture of his penis to K.G., who was then 15 years old and a family friend he had "known for years." Davis also admitted that he had exchanged "inappropriate" messages of a sexual nature with K.G.

his Fifth Amendment rights. A presentence investigation ("PSI") report was ordered, and a sentencing hearing was held on August 21, 2023.

At the hearing, the trial court considered the facts that: Davis had "known the victim of the offense from the time she was a very young child"; he was "friends with the victim's parents"; the two families were "neighbors"; and Davis's daughter was "a friend of the victim and close in age to the victim." The trial court then determined that Davis had "used his status as a safe adult to gain access to and victimize the juvenile." The trial court sentenced Davis to seven years' imprisonment at hard labor with credit for time served and ordered him to register as a sex offender for a minimum of 15 years upon his release, as well as to complete an approved sex offender program.

On August 30, 2023, Davis filed a motion to reconsider sentence, which was denied by the trial court without a hearing. The instant appeal was filed by Davis. The sole issue on appeal is whether the seven-year hard labor sentence is excessive.

## DISCUSSION

*Defendant's Argument*

Davis urges that his maximum sentence of seven years of imprisonment at hard labor is excessive. He points out that he was 42 years old when sentenced, had no prior felony convictions and a history of employment, held several professional certificates and licenses to operate various types of equipment, was the primary financial provider for his family, and had successfully started treatment to address his conduct involved in this matter.

Appellate counsel also points out that, while the probation officer felt that Davis was minimizing his role in this matter, the officer did note that Davis admitted that "being an adult, my actions were unacceptable." Moreover, Davis's participation in therapy was described as faithful, timely, and productive by John Gianforte, his counselor.

In the program, Davis was described as having acted with integrity and being one who acknowledged his responsibility. More importantly, Davis sought individual counseling in addition to participating in the required group counseling. Davis had a favorable diagnosis. In 14 support letters, Davis was described by family, friends, and his employer as a good and involved father and family provider, a good person and friend, and a successful professional. He was said to be hardworking, trustworthy, timely, productive, dependable, kind, caring, honest, well-intentioned, one who fixed issues before they became problems, and a person who helped others without being asked.

Appellate counsel contends that while Davis's crime is serious, there was no evidence he was the worst of the worst offenders convicted of indecent behavior with juveniles by improper communication. There was no evidence Davis attempted to have K.G. engage in sexual acts; showed sexual acts to K.G. or asked her to send him videos or pictures of sexual acts; or tried to engage in sexual or inappropriate relations with K.G. in real life.

Davis admitted his conduct was wrong and unacceptable. Appellate counsel asserts that the maximum sentence imposed in this case is excessive. Therefore, it was imposed in violation of Davis's constitutional rights because it served no purpose and was merely punitive. Appellate counsel

urges this Court to vacate his sentence and remand this matter for resentencing.

### *The State's Argument*

The State urges this Court to affirm the defendant's seven-year sentence, pointing out that indecent behavior with juveniles by improper communication is a serious crime. In this case, it has caused long-term damage to both the victim and her family. Additionally, Davis, rather than accepting responsibility, blamed his victim for initiating the contact, flirting, and having a crush on him. The State agrees with Davis on one point and one point only—that his actions were "disgusting" and there was "no excuse for it."

The defendant has made no showing that his claim of excessiveness merits consideration by this Court, urges the State. Davis's arguments lack foundation and fail to address the actual issues before this Court, which are whether the trial court abused its discretion in determining the sentence for this particular defendant. The trial court made a finding of fact based on its determinations regarding the weight and credibility of the evidence presented by the State and the defense. There is no indication of any abuse on the trial court's part, and for that reason, the State respectfully urges that the trial court's sentence be upheld.

### *Analysis*

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of a factual basis for a sentence is the goal of article 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712

4

(La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071.

The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 354 So. 3d 824; *State v. Bell*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Gant*, *supra*; *State v. Bell*, *supra*; *State v. Thompson*, 50,392 (La. App. 2 Cir. 2/24/16), 189 So. 3d 1139, *writ denied*, 16-0535 (La. 3/31/17), 217 So. 3d 358. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Gant*, *supra*; *State v. Bell*, *supra*; *State v. Lathan*, 41,855 (La. App. 2 Cir. 2/28/07), 953 So. 2d 890, *writ denied*, 07-0805 (La. 3/28/08), 978 So. 2d 297.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Bell*, *supra*. As noted by the Supreme Court in *State v. Allen*, 22-508, p. 2 (La. 11/1/22), 348

So. 3d 1274, 1276, a sentence may be excessive under La. Const. art. I, § 20 even if it falls within the statutory range established by the Legislature.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Gant, supra*; *State v. Bell, supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. *Id. State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Gant, supra*; *State v. Bell, supra*.

As a general rule, maximum or near sentences are reserved for the worst offenders, and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gant, supra*; *State v. Sims*, 53,791 (La. App. 2 Cir. 6/30/21), 322 So. 3d 902; *State v. Hogan*, 47,993 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1195, *writ denied*, 13-0977 (La. 11/8/13), 125 So. 3d 445.

La. R.S. 14:81 provides in part:

(A) Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

. . . .

(2) The transmission, delivery, or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at

6

least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

. . . .

(H) (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.

We have reviewed the details of this case, the arguments by counsel for Davis and the State, and the trial court's reasons for sentencing, and have analyzed and compared cases in which the defendants have been sentenced for indecent behavior with a juvenile with facts similar to the one before this Court. First, this Court's interpretation of the worst offender/worst crime analysis would indicate that Davis is not the worst of offenders warranting the imposition of the maximum sentence under La. R.S. 14:81(H)(1). However, the trial court has *implied*, if not outright found, that the defendant in this case *is* the worst type of offender. Furthermore, the cases this Court reviewed and analyzed show that defendants who engaged in much more egregious conduct received more proportionate sentences.

In *State v. Haltom*, 45,460 (La. App. 2 Cir. 8/11/10), 46 So. 3d 708, the defendant, Kevin Haltom, visited an internet "chat room" and contacted a deputy sheriff, who was posing as a 14-year-old girl as part of an undercover sting operation. During these communications, Haltom arranged to meet the person he believed was a young girl at a mall in Bossier City and take her to a hotel to have sex. The defendant was arrested at the mall. An analysis of Haltom's computer's hard drive, seized after his arrest, revealed

7

14 images and 11 videos of child pornography. Haltom was charged with one count of indecent behavior with a juvenile, one count of computer-aided solicitation of a minor, one count of attempted carnal knowledge of a juvenile, and seven counts of pornography involving juveniles.

As a result of a plea bargain, Haltom pled guilty to indecent behavior with a juvenile, and the other pending charges were dismissed. The trial court sentenced him to seven years at hard labor, with all but five and one-half years suspended (**actual sentence of five and one-half years)**, together with a fine of $5,000 and five years of active supervised probation. The trial court noted that the defendant was a 32-year-old first time felony offender who had expressed remorse and received counseling from both a licensed psychologist and a minister. The court noted that while the psychologist's report contained the notation that it did not consider Haltom to be a "high" risk for sexually acting out in inappropriate ways with underage females, obviously the counselor felt that the defendant continued to present *some* risk of such behavior. Additionally, the court observed that the defendant made preparations to meet with a 14-year-old girl to have sex and that child pornography was found on his computer. *Id.*, 45,460, pp. 1-2, 46 So. 3d at 709. Haltom's argument of excessive sentence was rejected by this Court on appeal.

The defendant, a driving instructor, in *State v. Aguillard*, 14-0798 (La. App. 3 Cir. 4/11/18), 242 So. 3d 765, *writ denied*, 18-1207 (La. 3/6/19), 266 So. 3d 897, was convicted of two counts of indecent behavior with juveniles for insinuating to two minor female students that he was going to show them his penis as he moved his hand toward his crotch area, making inappropriate comments about his genitalia and their breasts, and exposing them to

pornography on his cell telephone (they saw it on his phone screen as he looked at it during their driving class). The trial court sentenced Aguillard to **five years** on each count and ordered them to be served **concurrently** with each other.

In affirming the sentence, the appellate court noted that the defendant had no prior convictions and did not physically touch either of the two victims. Furthermore, Haltom had a history of preying on other girls. Additionally, there was testimony that, because he had experience in law enforcement, he "knew the law" and "how to avoid" its application. Most importantly, the appellate court felt, was the defendant's "complete lack of remorse" during trial. "As noted in the trial court's reasons, 'A unanimous jury, as well as [the trial court], was convinced beyond a reasonable doubt that the victims' testimony was truthful, and that the defendant actually committed these lewd and lascivious acts in the presence of these young girls, in order to arouse his own sexual desires, and that he used his position of control or supervision to accomplish these acts." *Id.*, 14-0798, pp. 33-34, 242 So. 3d at 786-87.

In *State v. Lynn*, 50,575 (La. App. 2 Cir. 5/18/16), 196 So. 3d 607, the defendant, Jerry R. Lynn, Jr., was charged by bill of information with seven counts of felony carnal knowledge of a juvenile, and in a subsequent proceeding, he was charged with 15 counts of indecent behavior with a juvenile. The facts that supported the charges were that Lynn, who was the victim's ex-stepfather, engaged in sexual intercourse with his minor stepdaughter, sent her sexually explicit text messages and nude pictures, and solicited nude photos from her. Lynn was allowed to plead guilty to one count of felony carnal knowledge of a juvenile and one count of indecent

9

behavior with a juvenile in exchange for the State's dismissal of the remaining 20 counts. There was no agreement as to sentencing.

Lynn was sentenced to ten years on the felony carnal knowledge of a juvenile charge and **five years** on the indecent behavior with a juvenile count, with the sentences to run consecutively to each other. The appellate court affirmed Lynn's sentence, finding no error in either the trial court's imposition of consecutive sentences or in the particular sentences imposed for each offense. In sentencing Lynn, the trial court noted that he had used his position of status as the victim's former stepfather to facilitate the commission of the offense, as he had known her since she was two years old and had developed a close relationship with her, then violated her trust. *Id.*, 50,575, p. 8, 196 So. 3d at 612. Furthermore, the trial court explained that the offenses involved multiple incidents for which separate sentences had not been imposed, noting that if Lynn had gone to trial, he would have likely been convicted of all of the charges.

The defendant in *State v. Whitmore*, 46,120 (La. App. 2 Cir. 3/2/11), 58 So. 3d 583, *writ denied*, 11-0614 (La. 11/14/11), 75 So. 3d 937, *cert. denied*, 566 U.S. 1012, 132 S. Ct. 2434, 182 L. Ed. 2d 1067 (2012), opted for a trial by judge. On August 21, 2009, the date set for Whitmore's bench trial, the State and defendant offered into evidence a joint stipulation, executed by the State, in lieu of calling witnesses to testify. The transcripts of texts and recordings of phone calls provide the following. *Id.*, 46,120, pp. 3-5, 358 So. 3d at 586-87. A sting operation had been conducted by the Bossier Parish Police Department. Officer Matt Wright posed as a 12-year-old female using the screen name "Liltaralee12" to communicate through electronic text messages with Whitmore. Several online conversations

ensued with defendant, whose screen name was "Sage1066." Officer Shelly Anderson, posing as the same 12-year-old female using the screen name "Liltaralee12," engaged in two telephone conversations with defendant on June 19, 2007, and July 17, 2007. The content of the transcripts and a recording of the phone conversations set forth the facts.

On June 4, 2007, defendant, using the screen name "Sage1066," sent an electronic message over the Internet to "Liltaralee12," a person he believed to be a 12-year-old child.[2] On June 19, 2007, defendant sent another electronic message to "Liltaralee12."[3] Officer Anderson, posing as "Liltaralee12," then called defendant.[4] On June 22, 2007, defendant contacted "Liltaralee12" through electronic text communication.[5] On June 26, 2007, defendant again made contact with "Liltaralee12" through electronic text communication.[6] There was another text from Whitmore

---

[2] During the conversation, defendant asked "Liltaralee12" how "experienced" she was with boys, described his past sexual experiences with a 16-year-old girl and a 14-year-old girl, and told her he could teach her to pleasure herself. He also asked her if she had ever performed oral sex on a guy or allowed someone to perform oral sex on her. He told her that all the sex talk had gotten him excited and he was going to look at her picture and pleasure himself.

[3] In this message, Whitmore related that she needed to learn how to masturbate, talked about her having an orgasm, and told her that he would talk her through masturbating if she called him. Defendant told her it was more exciting to share "it" with someone. He also volunteered to watch her when she urinated and to "wipe" it with his tongue. Defendant sent "Liltaralee12" two links to a pornographic website so that she could learn how to pleasure herself.

[4] During the phone conversation, defendant attempted to instruct "Liltaralee12" how to masturbate, giving her step-by-step directions.

[5] During the course of their conversation "Liltaralee12" asked defendant if she was old enough for him. Whitmore told her that she was not legally old enough for him, but if she thought she was then it was settled, they should get married. Since she was still a virgin, though, "we'll have to fix that." Defendant told her she would be the only cheerleader on the squad with a husband. Defendant also asked "Liltaralee12" if she had looked at the pornographic website, talked about his penis size, and told her that she needed to try to "get herself off" if she hadn't.

[6] "Liltaralee12" indicated that she would be staying with her 13-year-old cousin that week. Whitmore told her that she should practice masturbating with her cousin. He offered to drive up there and "show you" and said, "I'll do yours and you can do mine."

11

on July 17, 2007.[7]  On that same date, July 17, 2007, Officer Anderson, posing as "Liltaralee12," called defendant.[8]

The trial court, after considering the joint stipulation and attached exhibits, found Whitmore guilty of four counts of computer-aided solicitation of a minor and two counts of indecent behavior with juveniles. Thereafter, the court sentenced Whitmore to four years at hard labor without benefits on each count of computer-aided solicitation of a minor, with the sentences to run concurrently, **for a total of four years**.  Whitmore was also sentenced to four years at hard labor on each count of indecent behavior, to be served concurrently with each other but consecutively to his sentences for solicitation of a minor.  However, the four-year concurrent sentences for indecent behavior were suspended and, following his four-year prison term for computer-aided solicitation, Whitmore was to be placed on five-year active, supervised probation with the condition that he would not own or possess a computer during his probation.  *Id.*, 46,120, p. 6, 58 So. 3d at 587-88.

The court in *State v. Whitmore* noted that it had taken several things into account, including the fact that the defendant had never been arrested or convicted of a crime, his positive work history, his education, and that he never actually attempted to meet the purported 12-year-old.  However, the

_____

He also discussed "Liltaralee12" and her cousin performing oral sex on him in exchange for him bringing "the good stuff" (i.e. alcoholic beverages).  They discussed age again and defendant said while he was too old for a long-term relationship they could have fun ("movies, talking, sex, alcohol, shopping").  Defendant reassured "Liltaralee12" there are tons of ways to have sex without actually "f**king."

[7] In the text communication, Whitmore asked "Liltaralee12" if she was practicing her masturbation.

[8] In this call, Whitmore again gave "Liltaralee12" step-by-step instructions to assist her in masturbating.

12

trial court also found aggravating factors, such as the fact that Whitmore had taught high school for 20 years, believed that the purported victim was only 12 years old, and contacted the purported 12-year-old on several occasions. Furthermore, the language used by Whitmore in his communication with the alleged 12-year-old was totally inappropriate and very sexually explicit. *Id.*, 46,120, at pp. 26-27, 58 So. 3d at 597.

In *State v. Bridges*, 52,104 (La. App. 2 Cir. 6/27/18), 251 So. 3d 661, the defendant was convicted as charged for indecent behavior with a juvenile for sending the victim a text about them having sex and him performing oral sex on her. The message was intercepted before the juvenile received it. However, Bridges and the juvenile "were Facebook friends and used Facebook Messenger to communicate outside of church. In addition to messages, [the victim] testified that they had exchanged inappropriate pictures, '[s]tuff that shouldn't have been sent.' According to her testimony at trial, in one of the photos sent to her by the defendant, he was clothed on the top but 'exposed' on the bottom." *State v. Bridges*, 52,104, at pp. 3, 5, 251 So. 3d at 663, 665. Bridges was sentenced to **four years of imprisonment** by the trial court (excessiveness of sentence was not at issue on appeal).

In *State v. Yates*, 44,391 (La. App. 2 Cir. 7/1/09), 15 So. 3d 1260, *writ denied*, 09-2096 (La. 8/18/10), 42 So. 3d 398, the defendant logged into an internet "romance" chat room and thought he was having a sexual conversation with a 15-year-old girl named "Lori Poff." Yates worked at the Rutherford House, a halfway house program for troubled teens. He communicated that he would like to meet, and "Lori" (in actuality Caddo Parish Sheriff's Dept. Deputy Robert Greer) tried to set up a meeting

location.  Yates then tried to place a voice call to "Lori" over the computer, but "Lori" indicated there was no microphone on "her" computer and asked whether Yates wanted "Lori" to call him.  When Yates responded affirmatively, Dep. Greer asked Officer Nicole Mitts, a female, to call Yates.

In sentencing Yates, the trial court noted that the defendant had a "prior arrest involving child pornography and [the court] noted that some of the pictures retrieved from Yates' computer bordered on child pornography." *Id.*, 44,391 at p.10, 15 So. 3d at 1268.  Yates was sentenced to five years at hard labor, with all but three years suspended, and three years of probation (essentially a **two-year sentence**).

Finally, in *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795, the Louisiana State Police ("LSP") Special Victims Unit ("SVU") received a report that three female juvenile victims in Miller County, Arkansas, had communicated with the defendant, Scott Philip Hebert, of Winnfield, Louisiana, who had discussed sexual topics and coerced one of them to send him a pornographic image of herself.  The two law enforcement entities worked together to apprehend Hebert.

Arkansas deputies, posing as female juveniles, contacted Hebert, and these conversations quickly became sexual in nature.  Sgt. Amanda Fournier of the LSP, posing as a 14-year-old girl, contacted Hebert, allegedly by mistake.  Hebert continued the conversation, ultimately asking questions of a sexual nature and indicating that he wished to engage in sexual intercourse with Sgt. Fournier.  He also sent four photos of his penis to Sgt. Fournier. Hebert and Sgt. Fournier continued their conversation on two additional dates.  Hebert continued his sexual comments and advances and sent an additional photo of his penis.  Arrest and search warrants were obtained, and

14

Hebert was apprehended and charged with five counts of indecent behavior with a juvenile.

On December 15, 2014, Hebert pled guilty to all five counts of indecent behavior with a juvenile. The trial court informed him that it would give him "consecutive two-year sentences" with credit for time served, for a total of ten years (**two-year sentence** for each count). On appeal, Hebert urged that his sentence was excessive. This Court affirmed both the individual sentences and the imposition of consecutive sentences. First, the Court noted that by pleading guilty, the defendant reduced his sentencing exposure on each count from seven years with or without hard labor for a total sentence of 35 years' imprisonment. As for the consecutive nature of the sentences, this Court pointed out that Hebert had sent numerous sexually explicit messages and photographs to a party he believed to be a 14-year-old girl. Further, his history showed his involvement in similar acts with minors and undercover officers, showing his propensity to engage in this behavior and continue to commit additional acts if released, thus posing a danger to the public. *Id.*, 50,163, pp. 6-7, 181 So. 3d at 799-800.

Comparing the facts of these cases to the facts of the instant case, it is clear that Davis is not the worst of the worst offenders upon whom the maximum penalty should be imposed. We conclude that the trial court abused its wide discretion in sentencing the defendant to seven years' imprisonment, the maximum punishment allowed for this particular offense.

### Error Patent Review

Finally, the record indicates the trial court failed to advise Davis of his right to appeal or the time limitations for post-conviction relief. La. C. Cr. P. art. 930.8(C) provides that at the time of sentencing, the trial court shall

inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. Accordingly, we advise Davis that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C. Cr. P. arts. 914 or 922.

## CONCLUSION

For the reasons set forth above, defendant, Robert J. Davis's conviction is affirmed. Defendant's sentence is vacated, and the matter is remanded to the trial court for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.**