# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-458

**STATE OF LOUISIANA**

**VERSUS**

**DANNY TREY CROSSLAND**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 98678
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Hon. Terry Wayne Lambright**
**District Attorney**
**30th Judicial District Court**
**William R. Thornton**
**Assistant District Attorney**
**P. O. Box 1188**
**Leesville, LA 71496**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**2720 Rue de Jardin, Ste 100**
**Lake Charles, LA 70605**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Danny Trey Crossland**

**Danny Trey Crossland**
**R.L.C.C.**
**1630 Prison Road**
**Cottonport, LA 71327-4055**
**(000) 000-0000**
**APPELLANT:**
 **Danny Trey Crossland**

**ORTEGO, Judge.**

Defendant, Danny Trey Crossland, appeals his convictions and sentences for one count of indecent behavior with a juvenile, and one count of computer-aided solicitation of a minor, asserting ineffective assistance of trial counsel.

## PROCEDURAL HISTORY:

On September 18, 2023, Defendant, Danny Trey Crossland, was charged by bill of information with one count of indecent behavior with a juvenile, a violation of La.R.S. 14:81, and one count of computer-aided solicitation of a minor, a violation of La.R.S. 14:81.3.  Subsequently, on February 20, 2024, Defendant entered pleas of guilty to both counts.  On March 19, 2024, the trial court heard evidence regarding Defendant's sentences.  Thereafter, on March 26, 2024, the trial court sentenced Defendant on count one, indecent behavior with a juvenile, to six years at hard labor and on count two, computer aided solicitation of a minor, to seven years at hard labor.  The trial court ordered the sentence for computer-aided solicitation of a minor to be served without benefit of probation, parole, or suspension of sentence.  The sentences were ordered to run concurrently with one another.

On April 25, 2024, the trial court granted Defendant's motion for appeal.  Now before the court is a brief filed by Defendant alleging one assignment of error regarding the sentences imposed.

## FACTS:

As the Defendant plead guilty to these charges, the following factual basis was set forth by the State at the plea proceeding:

> Your Honor, the State contends on or about the dates alleged in the Bill of Information that this defendant did contact a minor, age thirteen, with the initials "J.P." via video chat on a game called "Roblox," R-O-B-L-O-X, at which time they began communicating with each other.  The messages in that application they - - he talked about bringing her to Texas where he lives.  Also, that he wanted her to live with him.  He was gonna [sic] enroll her in school, although she

had to be home schooled because he was not her parent or her guardian. He was enticing her into sexual activities on Roblox, Your Honor.

And also, on about the same dates alleged this defendant did send a text message to J.P. of his - - a selfie showing his penis with an erection and that would constitute, Your Honor, the indecent behavior of [sic] a juvenile.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent. However, we note that the court's minutes of sentencing require correction.

The sentencing transcript states that for computer-aided solicitation of a minor, the trial judge imposed the sentence at hard labor without benefit of parole, probation, or suspension of sentence, but the minutes fail to so indicate. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we direct the trial court to order the amendment and correction of the sentencing minutes of the court to accurately reflect the Defendant's sentence for computer-aided solicitation of a minor was imposed and is to be served at hard labor without benefit of parole, probation, or suspension of sentence.

## DISCUSSION OF THE MERITS:

In his sole assignment of error, Defendant asserts his counsel was ineffective for failing to present evidence concerning his medical conditions in mitigation of lighter sentences and for failing to file a motion to reconsider the sentences to preserve a review for excessiveness. Trial counsel's failure to file a motion to reconsider sentence, Defendant contends, was especially ineffective since the trial court failed to give any weight to his medical conditions, failed to consider similar

2

cases, failed to consider the limited sexual content of the messages between Defendant and the victim, and failed to consider the lack of any physical contact between Defendant and the victim.

In this case, Defendant pled guilty to indecent behavior with a juvenile and computer-aided solicitation of a minor. For indecent behavior with a juvenile, Defendant was exposed to a fine of not more than $5,000.00 and/or imprisonment with or without hard labor for not more than seven years. La.R.S. 14:81(H)(1). Defendant was sentenced to six years hard labor. For computer-aided solicitation of a minor, Defendant was exposed to a fine of not more than $10,000.00 and imprisonment at hard labor for not less than five nor more than ten years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:81.3(B)(1)(a). Defendant was sentenced to seven years at hard labor, without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently.

*Evidence Presented:*

Melissa Welch, an investigator with the State Police, identified text messages between Defendant and the victim, some of which indicated Defendant wanted to travel to Louisiana to pick up the victim, a thirteen-year-old girl. Investigator Welch testified that the plan discussed in the text messages was for the victim to sneak out and meet Defendant at the end of the driveway. According to Investigator Welch, the plan also consisted of the victim leaving all of her electronics behind so law enforcement would not track her, and then the two could live together in Texas. As for the victim's schooling, the texts discussed the victim being home schooled because Defendant would not be able to enroll her in school. Investigator Welch testified that Defendant also asked the victim for pictures of her younger siblings and talked about picking them up as well.

3

Jerry Cox, a Technical Support Officer with the State Police, testified as to the following text messages found on the victim's phone:

> Mr. Crossland sends her a message that says, "Hey, if i send u a dick pic would u send me a pick of u in ur panties? And i 100 % understand if u say no." She says, "I'll think about it." And then he sends an emoji back to her, a smiling emoji. And then he tells her don't forget to delete your messages before your mom gets back. She said "will do." And then she sends him a picture of her in her underwear and then he sends a picture back to her showing his penis.

When shown State's Exhibits 2.2 and 2.3, Mr. Cox identified the exhibits as images sent between Defendant and the victim—one showing Defendant's penis and the other showing the victim in a t-shirt and underwear. According to Mr. Cox, the Defendant then sent the victim a screenshot of where she lived and asked her if that was the right house. When the victim confirmed that Defendant had the right house, Defendant reminded her to delete their messages and said he would talk to her on "roblox."

Nichole Parker, a forensic interviewer at the Children's Advocacy Center (CAC), testified to her interview with the victim. The CAC interview was introduced as State's Exhibit 3.2 without objection.

The victim's video interview shows at the time of the interview, the victim was thirteen and going into eighth grade the next year. The victim lived with her mother and two younger siblings. The victim said her mom told her she was at the meeting/interview to talk about the "Wayne" situation. The victim also stated that she had just found out that "Wayne was not his real name." According to the victim, she and Defendant started talking on Roblox about a week prior. The victim told the interviewer that Defendant asked her to be his girlfriend, and she said yes. As for Defendant's age, the victim said Defendant told her he was twenty-seven. The victim was told shortly before the interview that Defendant was actually thirty-eight years old. When asked if Defendant ever asked her age, the victim said he asked her

4

after they had begun dating. The victim testified that when she told Defendant she was thirteen, the Defendant told her he did not want the age difference to be a problem for them. The victim said when she and Defendant messaged one another, Defendant asked about her mom and siblings. The victim and Defendant talked about Defendant driving to get her and taking her back to Texas. According to the victim, they talked about Defendant coming to get her at night and parking up the road so that no one would see him. The victim estimated that she and Defendant had been messaging for a week or two. Although Defendant asked for her phone number, the victim said she and Defendant mostly communicated through Roblox.

When asked if Defendant ever sent her a picture, the victim said Defendant sent her a picture of what he claimed he looked like. In response to the interviewer's question regarding what she saw in the picture, the victim replied that Defendant was wearing a hat and sunglasses. The victim did not remember if Defendant sent any other pictures. As for the picture she sent Defendant, the victim testified that her hair was down, and she was wearing a crop top with jewelry. Although she remembered Defendant asking her to send him a picture of her in her underwear, the victim did not remember if she sent that type of picture. The victim said Defendant did not pressure her into doing things.

According to the victim, Defendant wanted to know if her siblings also wanted to leave the house. After the victim asked both of her siblings if they would want to go live with someone else, one of her siblings told the victim's mom. The victim's mom then looked at the victim's phone and Roblox account and learned of the victim's communication with Defendant.

Rhonda Jordan, a detective that monitored jail phone calls, testified that she located some calls that she thought may be relevant to this case. Those phone calls were introduced as State's Exhibits 4.1, 4.2, and 4.3, and the pertinent portions were

5

played in open court. One pertinent portion of a phone call by Defendant submitted was a conversation between Defendant and his mother wherein Defendant questioned why a five-year-old could consent to changing his sex but a thirteen-year-old could not consent to sending a semi-nude photo of herself.

The trial court considered the matter submitted, stated that it would view "the video" in camera, and fixed sentencing for March 26, 2024.

*Defendant's position:*

At the March 26, 2024 sentencing hearing, Defendant gave a statement regarding things he remembered as a result of his interview for the Presentence Investigation (PSI) report. Defendant informed the court of time he served for a burglary he committed in 2009, of his school history, of attending rehab for drinking, and of various wrecks he had been in, including a hit and run for which he received "misdemeanor probation." Defendant also stated the following regarding his medical disorder:

> I know to some people that my medical disorder seems fake and made up, but it's not. My walk and balance, speech and memory problems are very real and very frustrating. Uh, my neurological disorder is clinically diagnosed. More than one doctor, more than one neurologist and more than one state know about - - know about it. My disorder, I've been to more than one hospital where it is also reported.

Defendant acknowledged that in his PSI interview, he said he had never been to rehab or on probation. Defendant offered as an explanation that he remembered his rehab and probation only after talking with his mother. Finally, Defendant claimed that until his current convictions, he was able to possess a gun, which he suggested was proof that he was not a felon.

Additionally, a statement by the Defendant was introduced as Defendant's Exhibit 1. Although in the first line of the statement Defendant admitted that he had no one to blame but himself for the predicament he was in, the rest of the statement

focused on Defendant's medical issues. Defendant informed the trial court that he was supposed to take chemotherapy medication for tumors in his knee. Because he had not taken the medication for the nine months he was in jail, Defendant claimed his knee was painful and swollen. Defendant testified as to the name and contact information of his oncologist. Defendant also claimed to have a neurological disease that caused problems with his balance, speech, vision, and memory. According to Defendant, his neurological condition was documented by his neurologist, Dr. Emily Forbes.

Finally, Defendant asserted that his mother was in need of his care. For all of these reasons, Defendant asked the trial court to place him on probation, possibly with an ankle monitor.

*State's position:*

In its argument to the court, the State asserted the following:

He talks about his neurological disease, but Mr. Crossland wrote a book about it, and on pages 30, 31 and 32 he talks about all the symptoms about his neurological disease. And not one of them - - not one symptom that he lists in his own published book does it say that he has the inability to know right from wrong. Not one symptom in his own published book does he say that he does not have the - - an impulse control problem. Not one symptom in his own published book does he say that it causes pedophilia.

He is right, he is not charged with a drug charge or a crime of violence, but this is a heinous crime. This is an offense against a thirteen-year-old victim while he was living with his mother. In his own statement he talked mostly about his own physical ailments as opposed to - - he apologized for two seconds to the court for what he had did [sic] and then he talked about how many diseases he has, which is unverified to the court, and then asked for probation.


The State would ask, Your Honor, any sentence imposed in this matter should be ran [sic] consecutively as opposed to concurrent listing all the factors in Article - - Code of Criminal Procedure Article 883, Your Honor. In that, one, , [sic] the defendant's criminal history. Although he does not have a horrible criminal history, he does have one prior conviction.

The gravity or dangerousness of the crimes; this is a sex offense against a minor. He didn't just talk dirty to her, Your Honor, he talked about coming to get her - - he had her address. He talked about coming to get her siblings with her. That would be more than one child he was looking for.

The viciousness of the crimes; Your Honor, once again, it's a crime against a child. Every crime against a child has viciousness to its nature whether it's aggravated or not.

The harm done to the victim; you heard from her own mother, he incited sexual desires in a minor. This thirteen-year-old will be incited sexually for the rest of her life at a premature age.

Whether defendant constitutes an undue risk of danger to the public; he certainly does. You heard the jail calls. He doesn't take [sic] any remorse. The only thing Mr. Crossland has done to take responsibility is to plea [sic] guilty as charged, that's it. You heard him on the jail calls, if a five-year-old can consent to a sex change, why can't a thirteen-year-old consent to send pictures to me? He doesn't think it's illegal, Your Honor. He also said in the jail calls to his mother that yes, some of the stuff that I sent her was inappropriate according to law. Not inappropriate according to a grown human being. He still doesn't realize it's unlawful.

You heard the jail calls. Those jail calls were done in preparation of his jury trial. He knew what he was facing. Those were done on July (SIC) the 14th and 17th of this year. This is after he had all the evidence, watched all the videos and he still didn't know what he did was wrong.

Also, the potential for defendant's rehabilitation; I don't know, he's not undergone any kind of psychiatric evaluations, but based on his own words to his mother, based on his mother assisting him in committing these crimes, based on the symptoms, or lack thereof, in his own published book, that there may not be any rehabilitation for Mr. Crossland as far as him being a pedophile.

And whether or not he received a benefit of a plea bargain he pled straight up, Your Honor. So, the only benefit that he gets is the court's consideration that he pled straight up. However, he pled straight up the morning when we had a hundred and something folks here for venire; it wasn't the week prior. So, the State would request any sentence imposed be consecutive, but also this court issue a permanent protective order in favor of the victim in this matter 'cause he does know her address - - he shared it with her.

8

Defense counsel then responded with the following:

> And, Judge, just lastly for Mr. Crossland's benefit, please take into consideration his statement, take into consideration his own words, and the fact that, of course, he does have a debilitative disease. Of course, that is all - - all issues that he has to take care of himself personally, but we also ask, Judge, that you take those things into consideration.

At the conclusion of the evidence at the sentencing hearing, the trial court issued the following reasons during sentencing:

> The facts of this case are that on or about May 23rd, 2023, Melissa Welch of the Louisiana State Police Special Victims Unit was contacted by a woman who alleged that her thirteen-year-old daughter, J.P., had been communicating with an adult male from Texas through text and the phone application "Roblox." The child's mother indicated that she had gone through her daughter's cell phone and located text communications between the minor child and an individual who identified himself as "Wayne" . . . . In the text messages, the adult male sent nude photographs to the juvenile and asked for photographs from the juvenile in return. The male told the child to delete the messages so her mother does not find out because he would get in trouble. The minor child, J.P., sent the male her home address so he could come pick her up. The male, in return, sent a map to the minor child asking her to confirm where her house was, which she did. The child's mother indicated the male had sent two different photos to her daughter. . . .
>
> Melissa Welch of the Louisiana State Police Special Victims Unit sent the Louisiana Fusion Center the phone number that was texting the minor child, along with the two photographs sent from the male to the child. Through law enforcement software, the Fusion Center was able to identify Danny Trey Crossland as "Wayne." A comparison of social media pictures and the pictures that Mr. Crossland sent to the minor child were a positive match.
>
> . . . .
>
> A review of the messages between the defendant and the minor child reflects that on May 13, 2023, the minor child sent a message that says, "Hey, this is JP." The adult male immediately responds by sending a picture of himself to the child and she sends one in return. The adult male then tells the child she is beautiful and asks if her mom goes through her phone. The minor child tells the adult male that her mom looks at her texts. The adult male then tells the minor child to delete the text messages but lets her know they can still talk on Roblox. The adult male refers to the minor child as "baby" and tells her how he would hate to lose her if they got caught.

The adult male asks if he sends her a nude pic, if the child would send him a picture of herself in her panties standing in a full-length mirror. The messages continue and the adult male does, in fact, send a picture of himself standing in a bathroom with his pants pulled down, exposing his penis.

The trial court then recounted information from the victim's CAC interview, noting that the victim also sent Defendant a picture of her younger sister so Defendant could see what she looked like. Additionally, the trial court recounted the following from the CAC interview:

The two discussed the adult male coming to pick up the minor child and they had a plan that the minor child would wait until her mother was asleep and would walk to the end of the driveway and the adult male would pick her up. They discussed what she would need to pack. The adult male told her he would get a hotel room and asked if her sister would come with her.

Noting that it had ordered a PSI, the trial court stated that it had considered the following:

The court has considered the Sentencing Guidelines of Article 894.1, the Pre-Sentence Investigation Report, a letter from Mrs. Laura Bright, Danny Crossland's mother, which I'm going to order that that letter be filed in the record. Also, a letter was read into the record from the defendant at his sentencing hearing. The court also has reviewed the Children's Advocacy Interview of the minor child. And also, a letter from the victim's mother was provided to the court and read to the court in the sentencing hearing.

The factors that the court has taken into consideration under Code of Criminal Procedure Article 894.1 are, was there economic harm caused to this victim? The court believes that there was economic harm in that the Pre-Sentence Investigation indicates that the child is currently enrolled in counseling and there may be some monetary payments to be made pursuant to the child receiving counseling. And it's also likely that she will need counseling in the future.

There are no substantial grounds that exist that tend to justify or excuse this defendant's criminal conduct.

This defendant did not act under strong provocation by the victim or anyone else.

He's thirty-three years of age; he's not married and has no children.

10

He appears to be in good health. At the time of the plea, the defendant indicated he's not been treated for any kind of mental illness, head or brain injury. However, when interviewed for the Pre-Sentence Investigation, Mr. Crossland advised that he had to have surgery on his right knee for pigmented villonodular synovitis (PVNS) and further claimed to be treated for multiple mental illnesses, but did not provide any documentation to support this claim and also advised that he has not taken any medications regarding these mental conditions while incarcerated.

Regarding Defendant's employment history, the trial court noted that at the time of his plea, Defendant indicated he did "CNA work or LPN work." As for his educational history, the trial court noted that at the time of his plea, Defendant advised that he had fourteen years of education. When interviewed for his PSI, the Defendant stated that he obtained a Certified Nursing Assistant (CNA) certification from Paris Junior College. The trial court also noted that in her letter, Defendant's mother alleged Defendant was accepted at Texas A&M and received his CAN license. Further, according to his mother, Defendant also studied science at Denver University. The trial court further noted that despite Defendant's statement that he went to rehab for drinking, the trial court stated that there appeared to be no history of drug or alcohol abuse, and that Defendant denied receiving drug or alcohol treatment in the past.

Then the trial court noted the following aggravating factors:

The victim in this matter lacks maturity of a normal thirteen-year-old and is a very, very impressionable young lady. Number two, this victim would have been kidnapped, or worse, if it had not been for the speedy work of law enforcement and specifically, the Louisiana State Police. . . . [I]f they had not worked in such a fast fashion, unfortunately, this minor child could have been kidnapped, killed; no telling what would have happened to this minor child and potentially her sister, if her sister would have been picked up by his [sic] defendant. Thirdly, this defendant, the court finds, is a fraud, a malingerer, and a manipulator and he is a danger to society. Specifically what the court is referring to by Mr. Crossland being a malingerer, on the numerous times that he appeared in my court, he appeared to be unable to walk or stand on his own and had to have support of a deputy. However, at - - prior to the plea, there were videos displayed to the court where Mr. Crossland was walking in the jail totally unaided and since he's entered

11

his plea, he's been able to walk in and out of this courtroom without the aid of deputies, trying to obtain some sympathy from this court, which did not work.

He has a very extensive record, both a juvenile record and an adult record. On - - his juvenile record consists of on December the 6th of 2005, there was an offense of assault causes [sic] bodily injury as a juvenile. This disposition modification indicated on March 21, 2007. No further information was available.

Another incident occurred on January 17, 2006, assault causes [sic] bodily injury. The disposition modification indicated on March 21, 2007. No further information was available.

His adult record is such that on June the 30th of 2009, in the 380th District Court, McKinney, Texas, he was convicted of an amended charge of burglary of habitation, a felony. He was placed on probation. His probation was extended for three years on February the 11th, 2014.

On November 5th, 2012, in Grayson County Court in Sherman, Texas, he pled guilty as charged to theft of property between $20 and $500. He was sentenced to 30 days in the Grayson County Jail.

On August the 1st of 2013, in the Paris Municipal Court in Paris, Texas, he pled no contest to public peace and was given credit for time served.

On July the 14th of 2016, in Lamar County, Texas, he was found guilty of accident involving damage to vehicle, his adjudication was one year probation. It was completed satisfactorily on July 13, 2017.

On April 21, 2017, in the Paris Municipal Court of Paris, Texas, he pled no contest to disorderly conduct. He was sentenced to time served.

On June the 6th, 2017, in the Paris Municipal Court in Paris, Texas, he pled no contest to disorderly conduct, and he was sentenced to pay a total fine and court costs of $247.40.

This court finds that this defendant is not likely to respond favorably to probationary treatment, nor is he entitled to a probated sentence as his sentence requires that he serve his time, at least one of them, without benefit of probation, parole or suspension of sentence. He's also a second felony offender pursuant to the instant offense and the felony offense that occurred in the State of Texas.

This court finds that there is an undue risk that during the period of a suspended sentence or probation that this defendant would commit another crime.

12

The court finds that this defendant is a child predator and likely to engage in the same or similar conduct in the future if probation would be available to this defendant, which it is not.

This defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by commitment to an institution. And the court finds that a lesser sentence would deprecate the seriousness of this defendant's offense.

Thereafter, the trial court sentenced Defendant on count one, indecent behavior with a juvenile, to six years at hard labor; and on count two, computer-aided solicitation of a minor, to seven years at hard labor. The trial court ordered the sentence for computer-aided solicitation of a minor to be served without benefit of probation, parole, or suspension of sentence. The sentences were ordered to run concurrently with one another.

## ANALYSIS

*Ineffective Assistance – Failure to File Motion to Reconsider Sentence and Failure to Present Medical Evidence:*

In *State v. Doucet*, 09-1065, pp. 6–7 (La.App. 3 Cir. 5/5/10), 36 So.3d 1105, 1110–11 (third alteration in original), *writ denied*, 10-1195 (La. 12/17/10), 51 So.3d 19, this court discussed ineffective assistance of counsel for failure to file a motion to reconsider sentence as follows:

> [W]hen the record contains sufficient evidence to address the ineffective assistance of counsel issue, this court examines "whether there was a reasonable probability that the trial court would have reduced" Defendant's sentence if Defendant's trial counsel made or filed a motion to reconsider sentence. [*State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602] at 608 (citing *State v. Prudhomme*, 02–511 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, *writ denied*, 02–3230 (La.10/10/03), 855 So.2d 324).
>
> When the defense counsel fails to file a motion to reconsider sentence, Defendant may have a claim of ineffective assistance of counsel when Defendant "can show a reasonable probability, but for defense counsel's error, his sentence would have been different." *Prudhomme*, 829 So.2d at 1177 (citing *State v. Texada*, 98–1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854). Moreover,

13

> [a] claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

*State v. Francis*, 99-208, pp. 10-11 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 491, *writ denied*, 00-544 (La.11/13/00), 773 So.2d 156.

> To prove an allegation of ineffectiveness, Defendant must specifically show prejudice. *Blake*, 872 So.2d 602 (citing *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La.4/25/03), 842 So.2d 391). "Whether or not a defendant received ineffective assistance of counsel is a two-part inquiry. First, we must determine whether the trial court would have reduced the Defendant's sentences upon the filing of a 'Motion to Reconsider Sentence.' Second, we must determine whether the sentences were excessive." *Id.* at 609.

Thus, the question to be answered is whether the trial court would have reduced the Defendant's sentence had a motion to reconsider sentence been filed.

Defendant further contends that despite the repeated comments made about his medical condition at sentencing, his trial counsel failed to offer medical documentation in support of the diagnosis and failed to offer information regarding the symptoms and causes of a flare up. Defendant specifically mentions his counsel's failure to follow up on testimony at a pre-plea hearing that Defendant had received medical treatment while incarcerated. We note that this hearing is outside of the sentencing issue before this court. Further, the person testifying at the pre-plea hearing simply stated that he thought Defendant had been seen by the jail's doctor.

According to Defendant, "[p]resentation of medical evidence would have allowed the court to render sentences after fair consideration of any mitigating factors related to Appellant's medical conditions." Although Defendant footnotes

14

that "[a] quick search would have shown that this disease affects the part of the brain that controls coordination," he fails to name any specific evidence that his counsel failed to introduce.

The State counters that Defendant's claim of ineffective assistance of counsel for failure to introduce documents of his medical history was speculative and unsupported by the record. Furthermore, as noted by the State in its brief, Defendant was permitted to make a statement to the court regarding his medical disorders. Thus, the trial court was aware of Defendant's medical claims. The State further notes the trial court's opinion of Defendant as a malingerer and manipulator.

*Analysis*

As to trial counsel's failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel; a defendant must also show a reasonable probability that, but for counsel's error, his sentence would have been different. See U.S. Const. Amend. 6; *State v. Michael R. Suydam, Jr.* 23-475 (La.App. 3 Cir. 02/28/24), 381 So.3d 867 (citations omitted).

Here, and given the evidence presented at the sentencing hearing, and that Defendant's sentences were moderate and ordered to run concurrently, we find it unlikely that the trial court would have reduced the sentences received by Defendant had counsel filed a motion to reconsider sentences. Thus, we find Defendant failed to provide evidence that trial counsel's failure to file a motion to reconsider sentence would have resulted in a different or lesser sentence.

As to trial counsel's alleged failure to offer medical documentation in support of his alleged diagnosis and medical condition, Defendant does not specify what medical evidence should have been introduced by his trial counsel. Further, Defendant's alleged medical and mental issues were discussed at the sentencing hearing and the trial court could have sought more information if it felt such

15

information was pertinent.  As stated by the trial court, it formed its own opinion of the genuineness of Defendant's medical claims through its observations of Defendant during his appearances in court.   Additionally, we note the trial court's opinion of Defendant as a malingerer and manipulator.

Considering Defendant's failure to specify the evidence his counsel should have introduced, the trial court's awareness of potential medical and mental issues, and the trial court's impression of Defendant through its own observations, we find that Defendant fails to show that the trial court would have imposed a more lenient sentence had any additional medical evidence been introduced or a motion to reconsider sentence had been filed.

*Ineffective Assistance - Excessive Sentence*

The next part of the analysis in reviewing Defendant's ineffective assistance of counsel claim is to determine whether the sentences imposed were excessive.

Defendant asserts that the six-year sentence he received for indecent behavior with a juvenile was a near maximum sentence, and the seven-year sentence he received for computer-aided solicitation was a mid-level sentence.  Although the trial court found Defendant had an extensive criminal record, Defendant claims his only prior felony was a burglary in 2009, for which he received probation. Defendant further contends that all of his previous offenses occurred years before the current offenses, and none involved sexual misconduct.  In addition to ignoring his medical history, Defendant alleges the trial court failed to reference any mitigating factors, failed to consider sentences imposed in other cases, failed to consider the limited sexual comments between Defendant and the victim, and failed to consider the lack of physical contact between Defendant and the victim.

After comparing several cases, Defendant concludes his argument as follows:

> Crossland was not the worst offender. Other than sending one photograph of his penis for which he pled guilty to indecent behavior with juveniles and received a six-year sentence, the conversations between he and J.P. were not explicitly sexual in nature and there was no physical contact between the two as they never met each other. Likewise, unlike other defendants noted above, Crossland did not encourage J.P. to touch or fondle herself and he has no history of similar crimes. Even a mid-range sentence was in violation of the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution in light of the sentences imposed in other solicitation cases where the discussions were much more sexually explicit. Additionally, as noted earlier Crossland suffers from several medical conditions that should have been considered in mitigation. Had the mitigating factors present in this case been properly presented to the court and properly considered by the court, the sentences imposed in this case would likely have been lessened, especially in light of sentences imposed in cases involving much more egregious actions.

In its summary of pertinent information from the record, the State cites to text messages between Defendant and the victim wherein Defendant acknowledged that taking the victim to Texas would have constituted kidnapping. Even though Defendant denied being treated for any mental illness at his plea proceeding, the State notes that during his PSI interview, Defendant stated he had been treated for multiple mental illnesses. The State also notes the trial court denied its request for consecutive sentences.

According to the State, there is no reasonable probability that the trial court would have reduced Defendant's sentence had counsel filed a motion to reconsider sentence, noting that Defendant "could have been sentenced to a term of incarceration of seventeen (17) years but will likely serve less than seven (7) years in prison, with the benefit of good time credit." As for Defendant's claim that the trial court failed to consider mitigating factors, the State asserts that Defendant specifies no other mitigating factors the trial court could have considered. Despite Defendant's claim in brief, the State contends that the limited sexual comments and

lack of physical contact between Defendant and the victim were not valid mitigating

factors. The State concludes its argument with the following:

> Further, his assertion that the harm to the victim could have been far worse, but for the intervention of the State Police, and that he should have received a benefit at sentencing from his failure to physically injure the child or psychologically traumatize her even more, is absurd, and further demonstrates his utter lack of remorse for his crimes. As with his "limited sexual comments" assertion, far from constituting a mitigating factor, any physical harm to the child would have constituted extremely serious additional felonies and would have been charged and prosecuted as such. Having been prevented from committing a litany of even more egregious felonies against the child victim does not qualify as mitigation for the crimes he did commit.

> . . . .

> Additionally, although recently asserting that he has multiple mental illnesses, the State notes that defendant did not claim that he was mentally incompetent to enter his guilty plea or that he was insane at the time of the commission of the offenses for which he was charged. He did not ask for a competency hearing, either before, during, or after disposition of his case in the trial court, and he does not now seek such hearing in brief to this Court.

> As such, the defendant failed to prove that his trial attorney was ineffective or that the trial court erred in imposing sentence.

### *Legal Standard and Analysis*

Louisiana courts have laid out the following guidelines regarding excessive

sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has

wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002,

1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Regarding how the trial court must go about particularizing a sentence, this

court in *State v. Decuir*, 10-1112, pp. 2–3 (La.App. 3 Cir. 4/6/11), 61 So.3d 782,

785–86 (alterations in original), stated:

> Louisiana Code of Criminal Procedure Article 894.1 contains a series of factors to be considered by the trial court in sentencing a defendant. In considering these sentencing guidelines, the trial court must "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). However, to comply with La.Code Crim.P. art. 894.1(C), the trial court "need not articulate every circumstance or read through a checklist of items." *State v. Anderson,* 95–1688, p. 4 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483. Still, the record should establish that the trial court adequately considered the codal guidelines in particularizing

19

a defendant's sentence. *Id.* That is to say, "the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1." *State v. Ellis,* 42,520, p. 23 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, 152, *writ denied,* 07–2190 (La.4/4/08), 978 So.2d 325.

> The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith,* 433 So.2d 688 (La.1983); *State v. Dallas,* 36,397 (La.App.2d Cir.11/6/02), 830 So.2d 1113. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So.2d 1049 (La.1981); *State v. Strange,* 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587; *State v. Hudgins,* [519 So.2d 400 (La.App. 2d Cir.1988), *writ denied,* 521 So.2d 1143 (1988)].

*State v. Scott,* 36,763, p. 3 (La.App. 2 Cir. 1/29/03), 836 So.2d 1180, 1182. However, "[t]here is no requirement that specific matters be given any particular weight at sentencing." *Ellis,* 966 So.2d at 153.

Despite the mandates of La.Code Crim.P. art. 894.1, our courts have held that:

> [F]ailure to comply with article 894.1 does not automatically render a sentence invalid. Where the record clearly shows that an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with La.C.Cr.P. art. 894.1. *State v. Delaughter,* 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364, *writ denied,* 98–0018 (La.5/1/98), 805 So.2d 201, 1998 WL 234691. The question is whether the record presented is sufficient to demonstrate that the trial court did not abuse its discretion. *State v. Davis,* 448 So.2d 645 (La.1984).

*State v. Smith,* 34,325, p. 2 (La.App. 2 Cir. 12/20/00), 775 So.2d 640, 642. Sentences also will not be overturned for failure to comply with statutory guidelines where the sentencing court implicitly considered the factors set forth in La.Code Crim.P. art. 894.1. *State v. Thibodeaux,* 502 So.2d 296, 298 (La.App. 3 Cir.), *writ denied,* 505 So.2d 1140 (La.1987).

Here, and although Defendant entered pleas of guilty, the trial court heard testimony at the sentencing hearing regarding the facts of the offenses, including Defendant's solicitation of a thirteen-year-old child to be his girlfriend, Defendant's acquisition of the child's address in order to facilitate his plan to take both the child and possibly her siblings across state lines, Defendant's exchange of a picture of his exposed penis for a picture of the child in a t-shirt and panties, and Defendant's instructions to the victim to delete their messages.

Additionally, noting that it heard the jail call between Defendant and his mother in which Defendant complained that a five-year-old could consent to a sex change but a thirteen-year-old could not consent to sending him a semi-nude photo of herself, the trial court noted a showing of Defendant's lack of remorse. This lack of remorse was further demonstrated by Defendant's statement to the court, at the sentencing hearing, wherein he acknowledged his responsibility in one sentence and then used the rest of his statement to lobby for probation, touting his medical issues and his mother's dependence on him as support.

In its well-articulated oral reasons, the trial court summarized the evidence presented at the sentencing hearing, including the testimony, the victim's CAC interview, and exhibits. The trial court noted that it had considered the guidelines of La.Code Crim.P. art. 894.1, the PSI, and letters from the mothers of both the victim and Defendant, along with Defendant's age, employment history, educational history, and Defendant's apparent good health, as well as Defendant's claims of physical and mental illness. As for aggravating factors, the trial court noted the vulnerability of the victim, the extreme harm the victim avoided only because of police intervention, Defendant's extensive criminal history and status as a second felony offender, and the trial court's personal observation of Defendant as a malingerer and manipulator. The trial court specifically found that Defendant was

21

not likely to respond favorably to probation, that there was an undue risk that Defendant would commit another crime while on probation, and that a lesser sentence would deprecate the seriousness of the offenses.

Although Defendant complains that the trial court failed to consider mitigating factors, including his medical history, a review of the record shows the trial court did in fact consider Defendant's medical history, but did not find it to be a mitigating factor. As for Defendant's argument that the trial court failed to consider the limited sexual comments and lack of physical contact between Defendant and the victim, the trial court was aware of the facts of the case and focused on the aspects it felt were significant. Additionally, it is clear from the record and reasons given by the trial court, that the trial court adequately considered the guidelines of La.Code Crim.P. art. 894.1, as the trial court specifically noted the important elements, such as Defendant's age, marital status, family ties, health, employment record, prior criminal record, seriousness of offense, and the likelihood of rehabilitation.

Finally, we will compare Defendant's sentences with sentences imposed in other cases. In a recent case, the second circuit reviewed the excessiveness of a seven-year sentence (the maximum) for indecent behavior with juveniles by improper communications. *State v. Davis*, 55,792 (La.App. 2 Cir. 8/28/24), __ So.3d __ (2024 WL 3958977). Davis, who was forty-two at sentencing, admitted to sending one picture of his penis to a fifteen-year-old family friend. *Davis*, 55,792, p. 1 n.1. Finding Davis had used his status as a safe adult to gain access to the victim, whom he had known for years through a friendship with her parents, the trial court sentenced Davis to seven years at hard labor. In finding the sentence was excessive, the second circuit found Davis was not the worst offender when compared to other similarly situated offenders:

22

We have reviewed the details of this case, the arguments by counsel for Davis and the State, and the trial court's reasons for sentencing, and have analyzed and compared cases in which the defendants have been sentenced for indecent behavior with a juvenile with facts similar to the one before this Court. First, this Court's interpretation of the worst offender/worst crime analysis would indicate that Davis is not the worst of offenders warranting the imposition of the maximum sentence under La. R.S. 14:81(H)(1). However, the trial court has *implied*, if not outright found, that the defendant in this case *is* the worst type of offender. Furthermore, the cases this Court reviewed and analyzed show that defendants who engaged in much more egregious conduct received more proportionate sentences.

In *State v. Haltom*, 45,460 (La. App. 2 Cir. 8/11/10), 46 So. 3d 708, the defendant, Kevin Haltom, visited an internet "chat room" and contacted a deputy sheriff, who was posing as a 14-year-old girl as part of an undercover sting operation. During these communications, Haltom arranged to meet the person he believed was a young girl at a mall in Bossier City and take her to a hotel to have sex. The defendant was arrested at the mall. An analysis of Haltom's computer's hard drive, seized after his arrest, revealed 14 images and 11 videos of child pornography. Haltom was charged with one count of indecent behavior with a juvenile, one count of computer-aided solicitation of a minor, one count of attempted carnal knowledge of a juvenile, and seven counts of pornography involving juveniles.

As a result of a plea bargain, Haltom pled guilty to indecent behavior with a juvenile, and the other pending charges were dismissed. The trial court sentenced him to seven years at hard labor, with all but five and one-half years suspended (**actual sentence of five and one-half years**), together with a fine of $5,000 and five years of active supervised probation. The trial court noted that the defendant was a 32-year-old first time felony offender who had expressed remorse and received counseling from both a licensed psychologist and a minister. The court noted that while the psychologist's report contained the notation that it did not consider Haltom to be a "high" risk for sexually acting out in inappropriate ways with underage females, obviously the counselor felt that the defendant continued to present some risk of such behavior. Additionally, the court observed that the defendant made preparations to meet with a 14-year-old girl to have sex and that child pornography was found on his computer. *Id.*, 45,460, pp. 1-2, 46 So. 3d at 709. Haltom's argument of excessive sentence was rejected by this Court on appeal.

The defendant, a driving instructor, in *State v. Aguillard*, 17-0798 (La. App. 3 Cir. 4/11/18), 242 So. 3d 765, *writ denied*, 18-1207 (La. 3/6/19), 266 So. 3d 897, was convicted of two counts of indecent behavior with juveniles for insinuating to two minor female students that he was going to show them his penis as he moved his hand toward his crotch area, making inappropriate comments about his genitalia and their breasts, and exposing them to pornography on his cell telephone

(they saw it on his phone screen as he looked at it during their driving class). The trial court sentenced Aguillard to **five years** on each count and ordered them to be served **concurrently** with each other.

In affirming the sentence, the appellate court noted that the defendant had no prior convictions and did not physically touch either of the two victims. Furthermore, [Aguillard] had a history of preying on other girls. Additionally, there was testimony that, because he had experience in law enforcement, he "knew the law" and "how to avoid" its application. Most importantly, the appellate court felt, was the defendant's "complete lack of remorse" during trial. "As noted in the trial court's reasons, 'A unanimous jury, as well as [the trial court], was convinced beyond a reasonable doubt that the victims' testimony was truthful, and that the defendant actually committed these lewd and lascivious acts in the presence of these young girls, in order to arouse his own sexual desires, and that he used his position of control or supervision to accomplish these acts." *Id*., 17-0798, pp. 33-34, 242 So. 3d at 786-87.

. . . .

The defendant in *State v. Whitmore*, 46,120 (La. App. 2 Cir. 3/2/11), 58 So. 3d 583, *writ denied*, 11-0614 (La. 11/14/11), 75 So. 3d 937, *cert. denied*, 566 U.S. 1012, 132 S. Ct. 2434, 182 L. Ed. 2d 1067 (2012), opted for a trial by judge. On August 21, 2009, the date set for Whitmore's bench trial, the State and defendant offered into evidence a joint stipulation, executed by the State, in lieu of calling witnesses to testify. The transcripts of texts and recordings of phone calls provide the following. *Id*., 46,120, pp. 3-5, 58 So. 3d at 586-87. A sting operation had been conducted by the Bossier Parish Police Department. Officer Matt Wright posed as a 12-year-old female using the screen name "Liltaralee12" to communicate through electronic text messages with Whitmore. Several online conversations ensued with defendant, whose screen name was "Sage1066." Officer Shelly Anderson, posing as the same 12-year-old female using the screen name "Liltaralee12," engaged in two telephone conversations with defendant on June 19, 2007, and July 17, 2007. The content of the transcripts and a recording of the phone conversations set forth the facts.

On June 4, 2007, defendant, using the screen name "Sage1066," sent an electronic message over the Internet to "Liltaralee12," a person he believed to be a 12-year-old child. On June 19, 2007, defendant sent another electronic message to "Liltaralee12." Officer Anderson, posing as "Liltaralee12," then called defendant. On June 22, 2007, defendant contacted "Liltaralee12" through electronic text communication. On June 26, 2007, defendant again made contact with "Liltaralee12" through electronic text communication. There was another text from Whitmore on July 17, 2007. On that same date, July 17, 2007, Officer Anderson, posing as "Liltaralee12," called defendant.

The trial court, after considering the joint stipulation and attached exhibits, found Whitmore guilty of four counts of computer-aided solicitation of a minor and two counts of indecent behavior with juveniles. Thereafter, the court sentenced Whitmore to four years at hard labor without benefits on each count of computer-aided solicitation of a minor, with the sentences to run concurrently, **for a total of four years**. Whitmore was also sentenced to four years at hard labor on each count of indecent behavior, to be served concurrently with each other but consecutively to his sentences for solicitation of a minor. However, the four-year concurrent sentences for indecent behavior were suspended and, following his four-year prison term for computer-aided solicitation, Whitmore was to be placed on five-year active, supervised probation with the condition that he would not own or possess a computer during his probation. *Id.*, 46,120, p. 6, 58 So. 3d at 587-88.

The court in *State v. Whitmore* noted that it had taken several things into account, including the fact that the defendant had never been arrested or convicted of a crime, his positive work history, his education, and that he never actually attempted to meet the purported 12-year-old. However, the trial court also found aggravating factors, such as the fact that Whitmore had taught high school for 20 years, believed that the purported victim was only 12 years old, and contacted the purported 12-year-old on several occasions. Furthermore, the language used by Whitmore in his communication with the alleged 12-year-old was totally inappropriate and very sexually explicit. *Id.*, 46,120, at pp. 26-27, 58 So. 3d at 597.

In *State v. Bridges*, 52,104 (La. App. 2 Cir. 6/27/18), 251 So. 3d 661, the defendant was convicted as charged for indecent behavior with a juvenile for sending the victim a text about them having sex and him performing oral sex on her. The message was intercepted before the juvenile received it. However, Bridges and the juvenile "were Facebook friends and used Facebook Messenger to communicate outside of church. In addition to messages, [the victim] testified that they had exchanged inappropriate pictures, '[s]tuff that shouldn't have been sent.' According to her testimony at trial, in one of the photos sent to her by the defendant, he was clothed on the top but 'exposed' on the bottom." *State v. Bridges*, 52,104, at pp. 3, 5, 251 So. 3d at 663, 665. Bridges was sentenced to **four years of imprisonment** by the trial court (excessiveness of sentence was not at issue on appeal).

In *State v. Yates*, 44,391 (La. App. 2 Cir. 7/1/09), 15 So. 3d 1260, *writ denied*, 09-2096 (La. 8/18/10), 42 So. 3d 398, the defendant logged into an internet "romance" chat room and thought he was having a sexual conversation with a 15-year-old girl named "Lori Poff." Yates worked at the Rutherford House, a halfway house program for troubled teens. He communicated that he would like to meet, and "Lori" (in actuality Caddo Parish Sheriff's Dept. Deputy Robert Greer) tried to set up a meeting location. Yates then tried to place a voice call to "Lori" over the computer, but "Lori" indicated there was no microphone on

"her" computer and asked whether Yates wanted "Lori" to call him. When Yates responded affirmatively, Dep. Greer asked Officer Nicole Mitts, a female, to call Yates.

In sentencing Yates, the trial court noted that the defendant had a "prior arrest involving child pornography and [the court] noted that some of the pictures retrieved from Yates' computer bordered on child pornography." *Id*., 44,391 at p.10, 15 So. 3d at 1268. Yates was sentenced to five years at hard labor, with all but three years suspended, and three years of probation (essentially a **two-year sentence**).

Finally, in *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795, the Louisiana State Police ("LSP") Special Victims Unit ("SVU") received a report that three female juvenile victims in Miller County, Arkansas, had communicated with the defendant, Scott Philip Hebert, of Winnfield, Louisiana, who had discussed sexual topics and coerced one of them to send him a pornographic image of herself. The two law enforcement entities worked together to apprehend Hebert.

Arkansas deputies, posing as female juveniles, contacted Hebert, and these conversations quickly became sexual in nature. Sgt. Amanda Fournier of the LSP, posing as a 14-year-old girl, contacted Hebert, allegedly by mistake. Hebert continued the conversation, ultimately asking questions of a sexual nature and indicating that he wished to engage in sexual intercourse with Sgt. Fournier. He also sent four photos of his penis to Sgt. Fournier. Hebert and Sgt. Fournier continued their conversation on two additional dates. Hebert continued his sexual comments and advances and sent an additional photo of his penis. Arrest and search warrants were obtained, and Hebert was apprehended and charged with five counts of indecent behavior with a juvenile.

On December 15, 2014, Hebert pled guilty to all five counts of indecent behavior with a juvenile. The trial court informed him that it would give him "consecutive two-year sentences" with credit for time served, for a total of ten years (**two-year sentence** for each count). On appeal, Hebert urged that his sentence was excessive. This Court affirmed both the individual sentences and the imposition of consecutive sentences. First, the Court noted that by pleading guilty, the defendant reduced his sentencing exposure on each count from seven years with or without hard labor for a total sentence of 35 years' imprisonment. As for the consecutive nature of the sentences, this Court pointed out that Hebert had sent numerous sexually explicit messages and photographs to a party he believed to be a 14-year-old girl. Further, his history showed his involvement in similar acts with minors and undercover officers, showing his propensity to engage in this behavior and continue to commit additional acts if released, thus posing a danger to the public. *Id*., 50,163, pp. 6-7, 181 So. 3d at 799-800.

Comparing the facts of these cases to the facts of the instant case, it is clear that Davis is not the worst of the worst offenders upon whom the maximum penalty should be imposed. We conclude that the trial court abused its wide discretion in sentencing the defendant to seven years' imprisonment, the maximum punishment allowed for this particular offense.

*Davis*, 55,792, pp. 7–15 (first alteration added) (footnotes omitted).

In the present case, the sentence for indecent behavior with a juvenile was near the maximum, and the sentence for computer-aided solicitation of a minor was below the maximum, and both sentences were within the statutory limitations. Further, Defendant benefited when the sentences were imposed concurrently by the trial court; thus, Defendant's total sentence of seven (7) years was considerably below the maximum sentence of seventeen (17) years he could have received if sentenced to serve consecutive sentences, as requested by the State. Although Defendant's sentences are on the upper end compared to the other sentences reviewed, Defendant's criminal history and his plans to take the victim and possibly her siblings across state lines are distinguishing and major factors in this case, and no fine was imposed in this case. Additionally, and as noted by the trial court, Defendant's total lack of remorse indicates the likelihood that he would repeat the same behavior if given the chance.

Furthermore, we note the supreme court's repeated admonition that the relevant question in reviewing a sentence for excessiveness is "'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" *State v. Aguliar-Benitez*, 21-174, p. 5 (La. 10/12/21), 332 So.3d 618, 620 (quoting *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)).

Considering the well-articulated reasons given by the trial court in sentencing, along with our review of the record, we find the sentences imposed were not excessive. Thus, we find that the trial court did not abuse its broad sentencing discretion in this case. For the foregoing reasons, we find that Defendant failed to prove his claim of ineffective assistance of counsel. Accordingly, the Defendant's assignment(s) of error lacks merit.

## **DECREE:**

Defendant's convictions and sentences are affirmed. However, we direct the trial court to order the amendment and correction of the sentencing minutes of the court to accurately reflect the Defendant's sentence for computer-aided solicitation of a minor was imposed and is to be served at hard labor without benefit of parole, probation, or suspension of sentence.

**AFFIRMED WITH INSTRUCTIONS.**